**SO ORDERED: May 31, 2011.**



**Basil H. Lorch III**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| GREGORY L. HAYDEN, | ) | Case No. 10-71828-BHL-7 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| KRISTI HAYDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 11-57002 |
| | ) | |
| GREGORY L. HAYDEN, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>PARTIAL JUDGMENT ON THE PLEADINGS</u>

This matter is before the Court for judgment on the pleadings pursuant to the parties'

joint oral motion in open court on March 15, 2011, and the parties' mutual acknowledgment in

their **Joint Pretrial Statement** that there are no uncontested facts.

*1*

The Plaintiff, Kristi Hayden ("Kristi"), seeks a ruling that the Defendant, Gregory L. Hayden ("Gregory"), may not discharge certain of the parties' joint marital obligations that he was ordered to pay by the Warrick Superior Court II ("Divorce Court") in its Provisional Entry of May 2, 2009 ("Provisional Order") [Docket #1-1].  Gregory, while conceding that the Divorce Court's order to pay child support may not be discharged by this Court, maintains that any other liability he owes to Kristi under the Provisional Order may be discharged in his Chapter 7 bankruptcy case.  The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334 and 157.

The Burden of Proof in Dischargeability Actions

The Bankruptcy Code is undergirded by a policy of giving a "fresh start" to the "honest but unfortunate debtor."  *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934).  Nevertheless, it is well settled that a debtor's interest in discharge is insufficient to require a more stringent standard of proof than is the case in most civil cases.  *Grogan v. Garner*, 498 U.S. 279, 286 (1991).  Accordingly, Kristi, as the plaintiff, must prove her case by the preponderance of the evidence.  *Id.* at 291.

Though the normal burden of proof for a civil action applies, "courts generally construe [§ 523] strictly against the objecting creditor and liberally in favor of the debtor in order to give the debtor a better chance at a fresh start."  *Ginter v. Crosswhite (In re Crosswhite)*, 148 F.3d 879, 881 (7th Cir. 1998).  A debtor is not entitled to such a friendly reading when the debt at issue arises from a domestic relations order, as "[b]ankruptcy law has had a longstanding corresponding policy of protecting a debtor's spouse and children when the debtor's support is required."  *Id.*  The Seventh Circuit Court of Appeals found this policy to apply with equal force to property settlements as to domestic support obligations as those obligations were treated by

2

the Bankruptcy Code before BAPCPA.  *Id.* at 882.  This Court sees no reason why the *Crosswhite* analysis of § 523 (a)(5) and (a)(15) should differ after BAPCPA's amendments.

<u>Background</u>

Kristi and Gregory were married August 6, 1983.  During the course of their marriage, Gregory, an ophthalmologist, became the sole member of American Eye Associates, LLC ("<u>American Eye</u>"), through which company he operated his medical practice in Vanderburgh and Warrick Counties in Southern Indiana.  Similarly, Gregory became the sole member of American Properties, LLC ("<u>American Properties</u>," and, collectively with American Eye, <u>the</u> "<u>Companies</u>"), which owned the real estate and some of the personal property used in Gregory's medical practice.

In February of 2003, and from time to time during their marriage thereafter, Kristi and Gregory incurred several obligations to Fifth Third Bank (the "<u>Bank</u>"), both jointly, for personal purposes, and individually, as guarantors of the Companies' business debts.  Specifically, Kristi and Gregory, on March 10, 2003, made a note in favor of the Bank secured by a first mortgage on their marital residence, and, on July 7, 2005, opened a home equity line of credit with the Bank secured by a second mortgage on their marital residence (collectively, the "<u>Residential Mortgages</u>").  Further, Kristi and Gregory each executed guarantees of debts owed to the Bank by the Companies (the "<u>Personal Guarantees</u>").

Kristi petitioned the Divorce Court for legal separation on February 2, 2009.  Upon Gregory's motion, on February 23, 2009, the separation action was converted to an action for dissolution of Kristi's and Gregory's marriage.  The Divorce Court issued its Provisional Order on May 2, 2009, memorializing its order from a hearing on April 21, 2009.  In pertinent part, the Provisional Order assigned Gregory the responsibility for paying (1) four thousand dollars per

month as "child support/maintenance," (2) "the parties mortgages," and (3) "all overhead, costs and expenses for businesses."[1]  The Provisional Order further awarded Kristi possession of the marital residence and primary physical custody of the parties' children.  The Provisional Order is the most recent germane order of the Divorce Court and remains in effect, subject to the automatic stay imposed by this Bankruptcy Court.

Thereafter, the Companies became delinquent in their obligations to the Bank, and, in December of 2009, Gregory and Kristi in their individual capacities, along with the Companies, were sued by the Bank in actions for collection, foreclosure, and replevin in Vanderburgh and Warrick Counties (collectively, the "Business Litigation").[2]  Kristi raised a substantive defense against the Bank.  Months later, Gregory failed to make timely payments on the loans secured by the Residential Mortgages.[3]

Gregory filed his Chapter 7 bankruptcy petition on October 16, 2010.  In Schedule E of his petition, he indicated that Kristi was entitled to an unsecured priority claim of an undetermined amount for "pending dissolution monthly support order of $4000, mortgage payment on 2933 Briarcliff Drive residence, cell phone service for 3 children, and health insurance premium covering estranged wife and 3 children."  Nevertheless, Gregory indicated in

---

[1] The Provisional Order charges Gregory with several other obligations, such as a payment to Kristi's attorney for his representation of her in the divorce proceedings, "boat loans," life insurance premiums, health insurance and cell phones for Kristi and the parties' children, and a portion of the tuition for the children's attendance at private grade school and college.  As these obligations were not specifically referenced in Kristi's Complaint, they are not before the Court, and this order should not be construed as an opinion of their suitability for discharge in Gregory's bankruptcy case.

[2] Based on the Pleadings and the **Parties' Stipulation of Facts**, it is unclear to the Court whether this suit brought by the Bank in Warrick County seeks a judgment against Kristi or Gregory in their individual capacities.  Kristi and Gregory have represented in their Stipulation that they "are not guarantors, upon the Warrick County commercial property debts."  However, the Bank has indicated, in its pleadings in Gregory's Chapter 7 bankruptcy case, that Kristi has guaranteed all the Companies' debts to the Bank.  *See, e.g.,* **Fifth Third Bank's Motion to Authorize Trustee to Operate Businesses to Facilitate the Sale of Corporate Property** in Gregory's Chapter 7 bankruptcy case.

[3] *See* the Bank's **Motion for Relief from Stay and for Abandonment of Real Estate** and the Court's order granting the motion in Gregory's Chapter 7 bankruptcy case.

Schedule F of his petition that Kristi has an unsecured nonpriority claim against him for "all marital claims possible."

With Gregory protected by the automatic stay pursuant to § 362,[4] the Bank was, on January 14, 2011, awarded a judgment in the Business Litigation in Vanderburgh County *in rem* against the Companies' real and personal property and against the Companies themselves. Kristi and the Bank agreed to delay the proceedings against her pending the execution of the judgment against the Companies. Based on the parties' submissions to date, it is unclear whether the Bank has obtained a judgment in the Business Litigation venued in Warrick County. Further, it is unclear whether Gregory is in arrears in his payment of child support, or whether the Bank has initiated foreclosure proceedings in state court and, if so, whether judgment has been rendered.

<u>Exception from Discharge of Domestic Support Obligations Pursuant to § 523(a)(5)</u>

A domestic support obligation may not be discharged in bankruptcy. In pertinent part, the Bankruptcy Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("<u>BAPCPA</u>"), defines a "domestic support obligation" ("<u>DSO</u>") as "a debt…owed to or recoverable by a spouse…in the nature of alimony, maintenance, or support…of such spouse…or child of the debtor…without regard to whether such debt is expressly so designated[, and is] established…by...an order of a court of record." § 101(14A).

Gregory has acknowledged that Paragraph 6 of the Provisional Order, which requires him to pay $4,000.00 per month "as child support/maintenance," is a DSO excepted from discharge by § 523(a)(5). *See* Gregory's Answer ¶ 12. Gregory was right to make this concession, as that obligation falls squarely within the definition of a DSO. Analysis of the other obligations at issue is not so simple.

---

[4] All citations to statutes are to Title 11 of the United States Code (the "<u>Bankruptcy Code</u>") unless otherwise specified.

As the parties were advised in open court at the hearing on March 15, 2011, the Court also finds that Gregory may not discharge his obligation to Kristi to make the mortgage payments on the house in which Kristi and the children live, as required by paragraph 8 of the Provisional Order. If Gregory's case had arisen under Chapter 13 of the Bankruptcy Code, the Court would be required to determine whether this obligation is a DSO excepted from discharge by paragraph § 523(a)(5) or a debt "to a spouse…that is [otherwise] incurred by the debtor in the course of a divorce or separation," as described by § 523(a)(15). That distinction is immaterial to the instant case because both types of debts are excepted from the Chapter 7 discharge. *In re Johnson*, 397 B.R. 289, 295 (Bankr. M.D.N.C. 2008); *In re Douglas*, 369 B.R. 462, 465 (Bankr. E.D. Ark. 2007); 4 L. King, Collier on Bankruptcy, ¶ 523.21 at 523-118 (15th ed. rev. 2009). Nevertheless, the Court finds that Gregory's obligation is nondischargeable under the narrower standard of § 523(a)(5) in addition to falling within the broader scope of nondischargeable obligations excepted from Chapter 7 discharge by § 523(a)(15). Furthermore, as discussed in detail below, the Divorce Court's order that Gregory pay a joint debt creates an obligation from Gregory to Kristi, even without an explicit requirement that Gregory hold Kristi harmless.

With respect to the inquiry required by § 523(a)(5), the Court, having found no binding precedent from the Seventh Circuit Court of Appeals, models its inquiry on the totality-of-the-circumstances tests applied by other courts. *See, e.g. Tatge v. Tatge (In re Tatge)*, 212 B.R. 604, 608 (8th Cir. 1997); *Friedkin v. Sternberg (In re Sternberg)*, 85 F.3d 1400, 1406 (9th Cir. 1996).[5] Though the Court is not bound by the Provisional Order's characterizations of the various obligations arising therefrom, § 101(14A) (providing that bankruptcy courts are to determine

---

[5] BAPCPA's amendments to § 523 and its addition of the definition of DSO in § 101(14A) expanded the class of support obligations excepted from discharge by § 523(a)(5) in ways that are immaterial to the instant case. *See* 4 L. King, Collier on Bankruptcy, ¶ 523.11 at 523-79 (15th ed. rev. 2009). Accordingly, pre-BAPCPA case law concerning this issue is as relevant as ever. For discussions of the changes made by BAPCPA to § 523(a)(5) and (a)(15), *see also Wodark v. Wodark (In re Wodark)*, 425 B.R. 834, 837-38 (10th Cir. B.A.P. 2010); *Miller v. Miller (In re Miller)*, 2009 WL 212125 (Bankr. S.D. Ind.).

whether an obligation is a DSO "without regard to whether such debt is expressly so designated"), the intent of the Divorce Court at the time it issued the Provisional Order is dispositive. *See, e.g.*, *Sternberg*, 85 F.3d at 1405. Several factors militate in favor of finding Gregory's obligation to pay mortgage installments on the former marital residence to be a DSO.

First, there is now and was at the time the Divorce Court issued the Provisional Order a tremendous disparity in Gregory's and Kristi's abilities to earn income. According to the Parties' Stipulation of Facts, Gregory's 2008 adjusted gross income for federal income tax purposes was $209,006; according to Gregory's Statement of Financial Affairs, he earned $240,097 from the Companies in 2008 and $443,517 in 2009. Though Gregory's financial life obviously took a turn for the worse in 2010, he clearly expects to return to his medical practice and expects it to be lucrative once again, as he has seen fit to reaffirm two debts secured by medical equipment for a total amount of nearly $300,000. Further, Gregory expects to be able to afford a luxury home, as he has reaffirmed his obligation as a co-debtor on a note in excess of $800,000 secured by his new home. In contrast, it is stipulated by the parties that "on April 21[st] 2009 Kristi was not employed," and no claim has been made that she has a significant earning potential. Moreover, the Divorce Court found a disparity between the parties' financial conditions sufficient to order Gregory to pay an allowance of $10,000 to Kristi's divorce attorney toward the costs of representation. Provisional Order ¶ 5.

Second, Kristi was awarded possession of the marital residence, and with it possession of "the furnishings and personal property belonging to the children and herself." Provisional Order ¶ 1. That provision, and other aspects of the Provisional Order, suggests the Divorce Court's intention to preserve the children's routines and way of life despite their parents' pending

divorce.  Kristi was awarded the marital residence along with primary physical custody of the children, and the record suggests that this was for the children's benefit.

Third, it would have been difficult, and, in fact, it has proved impossible, for Kristi to afford the marital residence without Gregory's assistance.  The Bank filed for relief from the automatic stay to pursue its remedies against Kristi and the marital property on November 2, 2010, alleging three months' delinquency.  The Court ultimately granted the Bank relief from the stay over Kristi's objection on March 22, 2011.  Kristi clearly cannot afford the house on her own.  Kristi's need for Gregory to pay the mortgage was immediate and in the nature of support; the Divorce Court did not impose the obligation merely to redress the balance sheet in the course of a provisional property settlement.

Dischargeability of the Business Debts Pursuant to § 523(a)(15)

Paragraph 4 of the Provisional Order imposes upon Gregory the obligation to "pay all overhead, costs and expenses for businesses, including any tax liabilities arising from said businesses" ("Paragraph 4 Obligations").  Kristi seeks a determination that this provision creates a nondischargeable obligation for Gregory to hold her harmless from her guarantees of the Companies' debts.

The parties dedicated considerable effort to debating the relevance of the absence of an explicit term in the provisional order requiring Gregory to hold Kristi harmless from certain joint marital obligations, and brought a split of pre-BAPCPA persuasive authority to the Court's attention.[6]  Neither the parties' submissions nor the Court's research has identified any binding authority, either before or after the enactment of BAPCPA.  However, the Court is persuaded by

---

[6] In support of the proposition that indemnification provisions are necessary to create direct liability from the debtor to the former spouse under the pre-BAPCPA version of § 523(a)(15), *see, e.g., Stegall v. Stegall (In re Stegall)*, 188 B.R. 597 (Bankr. W.D. Mo. 1995); *McCracken v. LaRue (In re LaRue)*, 204 B.R. 531 (Bankr. E.D. Tenn. 1997). *Contra, see Gibson v. Gibson (In re Gibson)*, 219 B.R. 195 (6th Cir. B.A.P. 1998); *Ruhlen v. Montgomery (In re Montgomery)*, 310 B.R. 169 (Bankr. C.D. Cal. 2004).

the recent analysis of the issue by the Tenth Circuit Bankruptcy Appellate Panel in *Wodark v. Wodark (In re Wodark)*, 425 B.R. 834 (10th Cir. B.A.P. 2010). The *Wodark* court determined that a provision of a divorce decree requiring the debtor to pay joint debts created a claim under § 101(5) because the debtor's spouse could, despite the omission of an indemnification provision in a divorce order, invoke post-judgment remedies to enforce the debtor's performance. *Id.* at 838-39. Gregory has not cited, and the Court has not identified, any post-BAPCPA cases to the contrary. This Court finds the omission of a hold-harmless clause to be of no import concerning Gregory's obligation to pay the mortgages. Nevertheless, at this point, the Court declines to rule on the dischargeability of these obligations, finding that they are not yet ripe for adjudication for a number of reasons.

First, assuming *arguendo* that Gregory will obtain a discharge of his obligations to the Bank on his Personal Guarantees of the Companies' business debts, Kristi is still third in line as a target for collection. At this point, based on the submissions by the parties, it is unclear whether the Companies' respective obligations will be satisfied by the sale of the Bank's collateral. If the sale of the real property owned by American Properties results in a deficiency, the Bank will look next to American Eye, as it has guaranteed American Properties' obligations. *See* Parties' Stipulation of Facts ¶¶ 10 and 29. Kristi would be vulnerable on a judgment in favor of the Bank only to the extent the Bank would be unable to satisfy its obligations by execution against the Companies. At this point, based on the parties' representations about the procedural posture of the Business Litigation, it is too early to ascertain the impact on Kristi.

Additionally, the Business Litigation is inchoate, and could be resolved in any number of ways. Kristi has raised a substantive defense in the Business Litigation, arguing that the Bank improperly accelerated the notes under Indiana law. Parties' Stipulation of Facts ¶ 27. Just as

the state court saw fit to withhold judgment on that issue pending the disposition of the Companies' assets against which judgment was rendered *in rem*, *Id.*, this Court will not render judgment on Gregory's obligation to hold Kristi harmless on the Paragraph 4 Obligations until the civil process has advanced in state court.

Third, the Docket in Gregory's Chapter 7 bankruptcy case indicates that several parties in interest are considering bringing actions against Gregory that, if successful, would moot the instant adversary proceeding. The Bank has obtained an extension of time to file its own adversary proceeding to seek the denial of Gregory's discharge of his obligations to it under § 523 or to seek to deny Gregory a discharge altogether under § 727. Similarly, the Chapter 7 Trustee has recently moved the Court for an extension of time to file a Complaint under § 727, as has Kristi herself. Furthermore, the Chapter 7 Trustee has only recently obtained an order from this Court allowing her to examine a third party pursuant to Fed. R. Bankr. P. 2004. Finally, the Trustee has not yet conducted of the Meeting of Creditors required by § 341.

Fourth, though the Court finds the Provisional Order to be an "order of a court of record" for purposes of § 523(a)(15) and is not persuaded by Gregory's argument that the Divorce Court acted *ultra vires* when it ordered him to pay certain joint marital debts in the Provisional Order,[7] the Court is mindful of the fact that provisional orders are inherently interlocutory. Ind. Code § 31-15-4-13 ("The issuance of a provisional order is without prejudice to the rights of the parties...as adjudicated at the final hearing in the proceeding."); Ind. Code § 31-15-4-14 ("A provisional order terminates when...the final decree is entered...or...the petition for

---

[7] Gregory devoted a considerable portion of his Supplemental Brief to this argument, based on an extraordinarily narrow reading of Ind. Code § 31-15-4-1 and the fact that neither the appellant in *Mosley v. Mosley*, 906 N.E.2d 928 (Ind. Ct. App. 2009), nor any party in any other Indiana case cited by the parties explicitly argued that domestic relations courts lack the power to allocate debts in provisional orders. Such a proposition, if true, would be contrary to the everyday practice of domestic relations law and a long line of Indiana appellate cases, of which *Mosley* is a prime example, instructing trial courts on the proper allocation of marital obligations pending suit, and, moreover, would frustrate the stated policy of Ind. Code Art. 31-15, "to provide for a temporary legal separation." Ind. Code § 31-15-1-2(5).

dissolution…is dismissed."); *see also Herron v. Herron*, 457 N.E.2d 564 (Ind. Ct. App. 1983) (holding that divorce court could account for husband's payment of mortgage installments pursuant to provisional order as part of final property settlement).  In light of the interlocutory nature of provisional orders, the Court is wary of unduly interfering with the jurisdiction of the Divorce Court, which has heard considerably more evidence in the matter and is consequently better apprised of the facts.  When the Divorce Court issues its final decree, it will have an opportunity to assess the parties' respective performances of their obligations under the Provisional Order and account for any deficiencies on Gregory's (and Kristi's) part by adjusting its awards appropriately.  *See, e.g.*, *Trent v. Trent*, 829 N.E.2d 81 (Ind. Ct. App. 2005) (child support arrearage under provisional order was extinguished by doctrine of merger upon entry of final decree of dissolution); *Crowley v. Crowley*, 708 N.E.2d 42 (Ind. Ct. App. 1999) (divorce court appropriately adjusted final property settlement to give wife credit for husband's failure to make mortgage payments required by provisional order).

<u>Conclusion</u>

IT IS THEREFORE ORDERED that Kristi is granted a judgment that Gregory may not discharge his obligations to pay child support and maintenance and to pay the mortgages on the marital residence.  Further, the Court declines to rule on whether Gregory may discharge his obligations under Paragraph 4 of the Provisional Order, finding the matter not to be ripe for adjudication.  This adversary proceeding shall remain pending in order to determine those remaining issues after the contingencies set forth above are resolved.

SO ORDERED this 31st day of May, 2011.

###